ANNA POTTER AND ELI POTTER v. NORTHRUP BANKING COMPANY *et al.*

**No. 10640.**

1. EXEMPTION OF HOMESTEAD INSURANCE MONEY—*waived by order for payment of loss to creditor, though drawee refuses to accept.* An order in writing, given upon sufficient consideration, addressed by one person to another, to pay to a third person money due to the first from a fourth one, which money the first and third persons expect will be presently paid by the fourth person, and which order contains a statement that the money in question has been "transferred" to the third person in satisfaction of an indebtedness due to him, but which order the second person refuses to accept in writing, but orally promises to pay the money when it

comes into his hands, is a valid agreement, evidencing a transfer of the equitable title to the money, which the first person may not rescind; and, the money transferred being the proceeds of insurance policies on a homestead dwelling destroyed by fire, the agreement of transfer constitutes a waiver of the homestead exemption.

2. —————— *and creditor does not waive rights under such order by garnishing fund.* In the case above stated, the agreement between the first and third persons being executory and not binding upon the fourth person, the transfer of the money due from him is equitable only; and garnishment by the creditor to divest the debtor's legal title to the money will be allowed, and will not of itself be regarded as conclusive evidence of a waiver of his interest as a transferee of the fund garnished.

3. JURISDICTION—*question of, in garnishment proceedings, considered.* Certain claims of lack of jurisdiction in garnishment proceedings examined and held to be unfounded.

Error from Wyandotte District Court. J. W. Jenkins, Judge *pro tem.* Opinion filed June 11, 1898. *Affirmed.*

*Nathan Cree* and *Aus¹in & Austin,* for plaintiffs in error.

*McGrew, Watson & Watson, Scroggs & McFadden,* and *Fyke, Yates & Fyke,* for defendants in error.

DOSTER, C. J.   The plaintiffs in error were indebted to the defendant in error the Northrup Banking Company, upon promisory notes, one for $800, and one for $8400. Suit was brought upon these notes, and the amounts of certain insurance policies, due to the plaintiff in error Anna Potter, were garnished in the hands of the insurance companies. The plaintiffs in error opposed the application of the insurance money to the payment of the notes, upon the ground that it was due for a loss sustained by the burning of a building owned and occupied by them as a homestead, and therefore exempt under the Constitution. To this the defendant in error, the Northrup Banking Company, replied that the plaintiffs in error had waived their homestead exemption, by executing an instrument assigning the

money due from the insurance companies and ordering payment of the amount due from them. The plaintiffs in error, after denying the legal effect of the order and instrument of assignment, rejoined that such instrument had been rescinded by them, and that the Northrup Banking Company had waived its rights thereunder.

The material facts of the case were these : The plaintiffs in error were indebted to the Northrup Banking Company to the amount of the two notes mentioned, with interest thereon. The note for eight hundred dollars was secured by mortgage upon real estate other than the homestead in question. The note for $8400 was unsecured. The homestead building was insured, in several companies, to the amount of $27,000. The Jarvis-Conklin Mortgage Trust Company, of Kansas City, Mo., held a mortgage upon the homestead property to the amount of thirteen thousand dollars. The homestead building was destroyed by fire ; and a few days thereafter the plaintiffs in error and the Northrup Banking Company agreed upon a compromise, scaling down the indebtedness due upon the two notes to the amount of $7250. The insurance money was to be paid into the hands of the Jarvis-Conklin Mortgage Trust Company, the homestead mortgagee ; and it was expected by the plaintiffs in error and the Northrup Banking Company that this payment would be speedily made. In consideration of the indebtedness due from the plaintiffs in error, and of its reduction to the amount stated, they gave the Northrup Banking Company an order upon the Jarvis-Conklin Mortgage Trust Company, in the following words :

"$7250.     KANSAS CITY, KAN., August 31, 1892.

" Please pay to the order of the Northrup Banking Company the sum of seven thousand two hundred and fifty dollars, out of any moneys received by you from

the Insurance Companies after your claim is satisfied, as I have transferred my interest to them to the above amount in satisfaction of their claims against me. The above mentioned insurance money growing from loss under policies on buildings formerly located on corner of State Avenue and Eighth Street in Kansas City, Kansas, said buildings having been lost by fire on 29th of August, 1892.      ANNA POTTER.

ELI POTTER."

This was presented by the parties to it to the Jarvis-Conklin Mortgage Trust Company, which refused to accept it, but offered to take it and the notes for $800 and $8400, and the mortgage securing the first named amount, and hold them "in escrow," and, after satisfying its mortgage out of the insurance money, to pay the agreed amount of $7250 to the Northrup Banking Company. This having been agreed to, the papers in question were inclosed in an envelope, and a memorandum of the agreement indorsed thereon, in the following words:

"AUGUST 31, 1892. Two notes, one of $8400, one of $800, mortgage on lots 30 and 31, Block 41, Wyandotte, given by Eli Potter and Anna Potter and put in escrow as per order enclosed of $7250 to be paid to the Northrup Banking Company by above and the Northrup Banking Company out of the proceeds after J. C. M. T. Co. claim be paid, and notes to be cancelled and delivered to Potters."

There is some doubt as to whether Mrs. Potter understood and assented to this modified arrangement, but we do not regard her lack of knowledge as material to the question involved. A few weeks thereafter, Eli Potter procured from the Northrup Banking Company an order upon the Jarvis-Conklin Mortgage Trust Company for the delivery to him of the mortgage securing the note of $800. It was delivered as ordered, and satisfaction entered on the mortgage records by the cashier of the Banking Com-

pany. No offer was made by the Potters to return this mortgage, or to assent to the cancellation of the entry of satisfaction. A few weeks thereafter, Anna Potter notified the Jarvis-Conklin Mortgage Trust Company of her rescission of the instrument of assignment of the insurance money, and of her refusal to adhere to the terms of the "escrow" agreement. Thereupon the papers were delivered back to the Northrup Banking Company, and suit was brought upon the notes and garnishment of the insurance companies made, as before stated. A trial was had, findings made, and judgment rendered for the Northrup Banking Company, from which the Potters prosecute error to this court.

The contentions of the plaintiffs in error have been sufficiently stated. They were set forth in oral argument and in printed brief with an elaboration of detail presenting not only principal but subsidiary and alternative propositions covering every possible phase of the case. It would extend the limits of an opinion far beyond its proper length were we to notice all the points made by plaintiffs in error and apply what is herein said to the refutation of their argument. They are all in our judgment unsound.

The order upon the Jarvis-Conklin Mortgage Trust Company was not an instrument which of necessity required acceptance in writing. It was accepted by oral agreement, and a memorandum of the acceptance and agreement indorsed upon the envelope containing the papers. Such part of the agreement and the memorandum of it as the parties chose at the time to have performed, was complied with by the Jarvis-Conklin Mortgage Trust Company by the delivery to the Potters of the mortgage for eight hundred dollars; and as to any question whether Anna Potter knew of this partial performance or whether she assented to it,

it is sufficient to say that she has accepted its benefits, or at least made no offer to restore what she received thereunder ; but whether she did or not we regard as immaterial.

The order upon the Jarvis-Conklin Mortgage Trust Company was not an agreement of homestead waiver to take effect in the future.    It was a present transfer of a homestead interest.    Its language is ·  "I have transferred my interest to them (the Northrup Banking Company) to the above amount in satisfaction of their claims against me."   It is true that this instrument is not in ·the form of a conveyance or other writing by assignor to assignee.    It is in the form of a letter of notification addressed to a third person ; but this is sufficient evidence of an agreement in relation to real estate to except the case out of the Statute of Frauds and to validate it as a contract between the parties. *Miller v. Railroad Co.*, 58 Kan. 189, 48 Pac. 853.    It was an instrument upon which an action for specific performance could have been maintained.

1. Exemption on homestead insurance money waived, when.

It is said, however, that the Northrup Banking Company abandoned its claim upon the insurance money transferred to it under this order, by bringing suit upon the original indebtedness, and also by instituting garnishment proceedings against the fund transferred to it as though such fund belonged to the Potters and not to it.    There is some force to this as a matter of evidence bearing upon the question of intent to waive rights, but as against the continued effort of the company to hold to the insurance money transferred to it, for the purpose of its application upon the indebtedness in question, it cannot avail.    While it is true that the insurance money had already been transferred to it, yet the insurance companies were not parties to

2. Creditor does not waive rights, how.

the transfer, and it was not, therefore, binding upon them. A convenient way to bring the fund under the jurisdiction of the court was the garnishment of the defendant's debtors. This fund and the companies owing it having been brought into court, it became subject to the equitable jurisdiction of the court for the purpose of applying the money in fulfilment of the agreement concerning it made between the interested parties. That he chose to accomplish this by the remedy of garnishment, which proceeds upon the theory of a fund belonging to the debtor, does not estop the creditor from asserting an equitable ownership of the fund garnished. It must be rememberd that the agreement of transfer of the money due from the insurance companies was executory. The legal title to the fund was in the debtors, and it would seem that garnishment was not an inappropriate remedy to divest the debtors' legal title to it, for to the extent of the legal title they were still the owners of the money.

It is also claimed that the Northrup Banking Company repudiated the agreement of compromise in pursuance of which the instrument of transfer of the insurance money was given, by suing upon the original promissory notes of $800 and $8400. It did not do so. It is true the original petition claimed judgment upon the promissory notes, but an amended petition was subsequently filed, setting forth the transaction of compromise and claiming only the reduced amount of $7250; for which amount, together with interest, judgment was rendered.

A further contention of the plaintiffs in error is that the funds garnished cannot be held to apply on the judgment against them, because the service of garnishee summons was defective. The statute provides two methods of service; one by summons issued to the

**3. Jurisdiction considered.**        sheriff and to be served by him upon "the chief officer of the company's agency", the other, by summons to the Superintendent of Insurance; in which latter case the answer must be by a certain day not less than forty days from the date of the summons. General Statutes 1897, ch. 74, § 24. In this case both methods of service were resorted to. In the case of the summons directed to the Superintendent of Insurance, the answer was required within twenty days from its date. It may be doubted whether the statute providing for service upon the Superintendent of Insurance applies to the service of garnishment summons. If it does not, the service made upon him was nugatory. If it does, it was probably defective, as claimed by the plaintiffs in error. However, a determination of neither of these questions is necessary. The service made by the sheriff was valid. The evidence as to the character of the agent upon whom the service was made brings the case within *Insurance Co. v. National Bank*, 58 Kan. 86, 48 Pac. 592; and the fact, which also appeared in evidence, that the agent upon whom service was made was not "the chief officer of such agency," because he was the only representative of the company, can make no difference. He was in the performance of all the duties of a chief officer within the decision of the case last cited.

It appears that after service upon the garnishees, they and the plaintiffs entered into an agreement indefinitely extending the time for the filing of their answers, and that subsequently the court made an order extending the time for the filing of their answers. The plaintiffs in error contend that this agreement and order ousted the court of jurisdiction over the garnishees, and that thereafter no answer could have been required of them, or could be legally

received from them.   The basis of this contention is the legal rule that garnishment proceedings are purely statutory, and must be conducted in substantial conformity to the statute, else the defendant debtor may interpose objections in bar of the creditor's right to judgment upon the garnishee's answer.   The legal rule as contended for doubtless exists ; but it applies no farther than the proceedings by which jurisdiction is obtained over the garnishee.   All the principal cases cited by the plaintiffs in error are cases of defects ·in the initiation of jurisdictional proceedings. After jurisdiction has once been obtained, it can only be lost by departures from the statutory methods so substantial in their nature as to amount to a release of the person or the subject-matter of controversy. This was not done by stipulating for or ordering a delay in the filing of the answers in garnishment.

Other claims of error are made, but they were argued less strenuously than those we have noticed. They are lacking in merit, however, and the judgment of the court below will be affirmed.